BENJAMIN GOOCH V. CHRISTIAN SCHEIDLER AND OTHERS.

A deed made by a Sheriff before the revolution, with the certificate of the Judge in the first instance by whom the execution purports to have been issued, with assisting witnesses, that it was executed before him this day of the date in accordance with law, was a judicial act, and is admissible in evidence without the production of the judgment.

The deed being a judicial act, and having remained of record as evidence of title claimed under it, since before the change of Government, we are of opinion the Court did not err in admitting it in evidence without the production of the judgment; and holding it valid and effectual to divest the title of the plaintiff's vendor (the defendant in execution.)

It would seem that it is not a fatal objection, nor one requiring further proof, that such deed does not recite the particular judgment or execution, but describes the same by the date, amount, name of defendant, and by whom rendered, without stating the name of plaintiff. But in this case an authentic copy of the advertisement, which was annexed to the deed and referred to therein, disclosed the name of the plaintiff in said judgment.

Error from Gonzales. Tried below before the Hon. Fielding Jones.

Action of trespass to try title to a quarter of a league of land, by plaintiff in error against defendants in error, commenced April 1st, 1854. Both parties claimed under Edward Hughart, to whom the land was originally granted June 19th, 1832. The plaintiff gave in evidence a deed from said Hughart to himself, bearing date 30th June, 1840, and "duly proven and recorded," in the language of the statement of facts. The statement of facts then read as follows: The defendants offered in evidence a deed from Malkijah Williams, as Sheriff, to one Stephen Smith, for the land in controversy. Here followed a document on paper of the third seal, for the years 1834 and 1835, in the form of an execution, directed to the Sheriff of the jurisdiction of Gonzales, department of the Brazos, from Ezekiel Williams, Judge of the first instance of the munity, dated in the town of Gonzales, this 16th —— 1834. It commanded the Sheriff "to seize the goods and chattels, lands and tenements of Edward Hughart, or so much thereof as may be sufficient, to satisfy a judgment entered on my docket, bearing date the 16th day of October, 1834, amount $165 08½, with costs of suit; and you will expose to public sale," &c., to be returned in 30 days.

Returned "served on one-quarter of a league of land of him, the said E. Hughart."

Certified 16th December, 1834, by Ezekial Williams, Judge in first instance, with two assisting witnesses, to be a true copy taken from the original on file in his office.

Then followed a copy of an advertisement, certified in same manner, same date. It advertised that Malkijah Williams, Sheriff, by virtue of an execution to him directed by the Judge in the first instance, in and for the jurisdiction of Gonzales, would sell to the highest bidder for cash, in the town of Gonzales, on the first day of December next, the quarter of a league of land received to Edward Hughart as a settler in the colony of Green De Witt, from the Commissioner of the Government,

Jose Antonio Navarro, or so much of the same as may be sufficient to satisfy an attachment in favor of Stephen Smith for $165 08½ and costs of suit, against the said Hughart. Dated Gonzales, Oct. 19th, 1834. (Signed by the Sheriff.) Memorandum at foot "executed by selling one-quarter of a league of land." (Signed by the Sheriff.) Then followed the certificate of its being a true copy, as already stated. Then followed—

This indenture, made 23d day of December, in the year of our Lord one thousand eight hundred and thirty-four, between Malkijah Williams, Sheriff of the jurisdiction of Gonzales of the one part, and Stephen Smith of the other part in the same jurisdiction, witnesseth : Whereas, on the 16th day of October, in the year of our Lord one thousand eight hundred and thirty-four, a certain execution was issued forth by the Judge in the first instance of the municipality, to the said Sheriff of the jurisdiction of Gonzales, commanding him, the said Sheriff, that of the goods and chattels, lands and tenements, of the said Hughart, of this jurisdiction, being in his bailiwick, he should cause to be made and levied the amount of $165 08½ cents with costs of suit, that being the amount of a judgment entered on the Judge's docket, bearing date the 16th day of October, 1834; and whereas, also, the said execution came into the hands of said Sheriff, and in pursuance of said command therein contained, the said Sheriff laid the same upon one-quarter of a league of land of him, the said Edward Hughart, being and lying in the aforesaid jurisdiction of Gonzales, being in No. 12 and class 10, being that certain quarter of a league of land received to him, E. Hughart, from Government, in the colony of Green De Witt, as a settler ; and whereas also, after due notice being given of the same, the said Sheriff did on the first day of December, in the year of our Lord one thousand eight hundred and thirty-four, expose the said quarter of a league of land, so as aforesaid taken in execution, to public sale to the highest bidder (as certified copies of the originals annexed do further show ;) and thereat the herein mentioned Stephen Smith became the highest bidder and purchaser of the said quarter of a league of land, for the sum of seventy dollars, current money of the Mexican United States, to the said Malkijah Williams, Sheriff as aforesaid, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, the said Malkijah Williams, Sheriff as aforesaid, hath granted, bargained and sold, and by these presents doth grant, bargain and sell, unto him the said Stephen

Smith, his heirs and assigns, the said quarter of a league of land so as aforesaid taken on an execution, and so as aforesaid exposed to sale, in virtue of the said execution, with the appurtenances thereto belonging; to have and to hold the said quarter of a league of land, with the appurtenances, unto the said Stephen Smith, his heirs and assigns, forever.

In witness whereof, the said Malkijah Williams, Sheriff as aforesaid, hath hereunto set his hand the day and year first before herein written.

MALKIJAH WILLIAMS, Sheriff.

Signed and delivered before us.
JOSEPH P. LALOR,
ALMERION DICKENSON.

I certify that the foregoing deed was this day executed before me in accordance with law, to which I sign with two assisting witnesses of my faith this day of the date.

EZEKIEL WILLIAMS, Judge in the first instance.

Assistant Witness                    Assistant Witness.
JOSEPH P. LALOR.                     ALMERION DICKENSON.

THE STATE OF TEXAS, *Gonzales County.*

I, F. Chinault, Clerk of the County Court of said county, certify that the hereunto appended instrument of writing is a true copy of a deed to Stephen Smith, on file in my office, and that I am proper keeper of conveyances and other instruments of writing between private individuals, which were filed in the office of the Alcalde or Judge of De Witt's colony, and transferred to the office of County Clerk at the change of Government, and that said deed is recorded in Gonzales county Record Book of Deeds B, on pages 87, 88, 89 and 90, and from an examination of said Record Book, appears to have been recorded previous to the 27th of June, A. D. 1840.

Given under my hand and seal of the County Court of Gonzales county this 23d day of April, A. D. 1855.

F. CHINAULT, Clerk C. C. G. C.

To which the plaintiff excepted as illegal, but which exception was overruled by the Court, and the paper read to the jury, which decided the cause.

This is the whole of the statement of facts; and it would seem from the last clause, that upon the admission of the deed to Stephen Smith, the plaintiff abandoned the case as lost.   It ap-

Gooch v. Scheidler.

peared, however, from authentic documents on file, that the land in controversy was partitioned among the heirs of Stephen Smith in 1849; that some of the defendants were of said heirs, and the others claimed under them by purchase. The Court instructed the jury as follows:—

The title introduced by defendants is a good deed and sufficient title, and you should find for the defendants.

Verdict and judgment for defendants. It appeared by bill of exceptions, that the ground on which the admission of the deed from Malkijah Williams, as Sheriff, to Stephen Smith, was objected to, was that no judgment was shown.

*A. J. Hamilton*, for plaintiff in error. It was error to admit the execution in evidence; for if it were admitted that it was *prima facie* evidence of facts properly recited in it, it does not recite a judgment. (Voorhees v. Bank U. S. 10 Pet. R. 449.) The Sheriff's deed is wanting in the same essential prerequisites. It describes no judgment; and if it did, would make no proof of such judgment; for it cannot be pretended that it is a judicial act. The judge simply certifies to the performance of the ministerial act of the Sheriff. The same facts are required to be proved, in proving title acquired at judicial sales under the Spanish civil law, that are required under the common law.

The question therefore is, could a Sheriff's deed be sustained at Common Law, by producing in its support an execution as uncertain as the one we are now considering, with a judgment equally uncertain? The following authority will show what is required at common law: 12 Wend. 74; 16 Id. 563; 4 W. C. C. R. 624; 7 Johns. R. 535; 3 W. C. C. R. 546; Cowen & Hill's Notes to Phil. Ev. Part 2d, p. 1070—1081; 12 Johns. R. 213.

No aid is acquired by the advertisement to the execution or deed; in no case can an advertisement prove any other fact, than that such advertisement was made. As an isolated fact, it is worthless. It adjudicates nothing, and can never supply the absence of judicial matter. (Hartley v. Beaum, 2 Barr. R. 165.)

The 2d assignment of error relates to the charge of the Court to the jury. The charge is short and pungent, to such a degree, that it may be said to be refreshing. Although the title papers offered by defendants had been permitted to go to the jury in evidence, they ought to have been left to find a verdict upon the facts without compulsion. And the charge was wrong as a con-

clusion of law arising upon the facts. The Sheriff's deed was not even an authentic act; (1 Partidas, 222;) and if it were, could only prove what it recites.

Lapse of time will not aid the defect, for there is nothing recited in favor of which a presumption can be indulged. And the party who it is assumed was the judgment creditor, being the purchaser, will charge him with knowledge of every defect and irregularity. (2 Black. R. 1.)

*F. W. Chandler*, also, for plaintiff in error.

*Parker & Nichols*, for defendants in error. It is too late now for the plaintiff in error to except to the instructions given to the jury in the Court below. His exceptions should have been taken at the time the charge was given. (Houston v. Jones, 4 Tex. R. 170; Jones v. Thurmond's Heirs, 5 Id. 318; Converse & Co. v. McKee, 14 Id. 20.)

Admitting that the judicial deed was properly read in evidence, there was no error in the charge of Court below; the plaintiff in error, after the reading of the said judicial deed, having abandoned his case.

The Civil Law, under which this judicial deed was executed, required the Judges of the first instance in the colony or munity, to carry into execution his own decrees and sentences, being partially assisted by the "Subaltern Sheriff," who was also an officer for the tribunal. (See Laws of Coahuila and Texas, p. 255, Art. 6; Id. 256, Art. 20; Id. 259, Art. 41, 42, and 43.)

Thus executed, the deed in question became a muniment of title to the purchaser at the sale, as perfect as could be conveyed by the sovereign of the soil, it being in its nature a judicial and not a ministerial act. It was not a Sheriff's deed, for such an instrument was unknown to the law governing at that place at the time this bill of judicial sale was executed. (Laws of Coahuila and Texas, p. 268, Art. 128; Febrero Mexicano, p. 45, 48; Land Laws, vol. i. p. 297, Sect. 2.)

By the laws of the country, the deed or bill of judicial sale in question was as perfect a record, and as authentic as the judgment itself, and as conclusive and binding as a grant from the Government. It furnishes in and of itself a complete record of all it purports to do and in the form prescribed by law. As such it should have been, as it was, admitted as evidence. (M.

C. Partidas, Law 52, vol. 2, page 698 ; 1 Partidas, 222 ; 6 N. S. 268; 3 Mart. R. 115 ; 5 Id. 382 ; 6 Id. 404 ; 11 Tex. R. 61 ; Id. 328 and 325 ; 11 La. R. 283 ; 10 Per. P. 449—474 ; 1 White Recop. 396 ; 3 Id. 390.)

Under the Spanish laws, any public act, and à fortiori any judicial act, proves itself ; and a beneficiary under such act cannot be expected to support it, until it is attacked by evidence impeaching it for fraud, &c.

It would seem, if a change of Government could not deprive him of title to his lands, such a change of Government could certainly not destroy the evidences of his title.

WHEELER, J. As respects the validity of the deed of the 23d of December, 1834, the present cannot be distinguished from the case of Lee v. Wharton. (11 Tex. R. 61, 75.) The deed is not, like a Sheriff's deed at Common Law, the mere act of the ministerial officer of the Court. It was executed before the Judge upon whose judgment the execution issued. It was executed with the sanction and authority of the Judge. It was as much a judicial act as the judgment it recites ; and being such, there was not the same necessity that the judgment should be produced as in the case of a Sheriff's deed, which is the act of a merely ministerial officer, and consequently is of no validity unless the judgment and execution from which the officer derived his power is produced. It appears that the deed in question was filed in the office of the Judge of the First Instance in De Witt's colony, and, upon the change of Government, transferred to the office of the County Clerk of the proper county, where it has remained of record, unimpeached, for nearly a quarter of a century. The purchaser was more immediately interested in its preservation, and it has been preserved; while it is not improbable that the docket of the Primary Judge may have been lost or destroyed, or placed beyond the reach of parties interested in his judgment, by some of the casualties consequent upon the revolution and change of Government and officers to whom the law confided its custody. To require the production of the judgment at this day, when the act of sale under it has remained thus long of record, unimpeached, and title has been claimed under it, would be to defeat the rights of purchasers, justly acquired, without any legal necessity, and in favor of those who, if they ever had rights, have been so slow in asserting them, as not to entitle them to be

29

regarded with any degree of favor. The deed being a judicial act, and having remained of record as evidence of title claimed under it, since before the change of Government, we are of opinion the Court did not err in admitting it in evidence without the production of the judgment, and holding it valid and effectual to divest the title of the plaintiff's vendor. And the judgment is affirmed.

Judgment affirmed.